In re EQUIMED, INC., Debtor.

Douglas R. Colkitt, M.D. Joanne Russell Jerome Derdel, M.D., Appellants,

v.

Reliance Insurance Company, Appellee.

No. CIV.H–02–1896.

Bankruptcy No. 00–1–1147–PM.

United States District Court, D. Maryland.

Aug. 1, 2002.

Jeffrey L. Tarkenton, Womble, Carlyle, Sandridge & Rice, Washington, DC, for Appellants.

David M. Gische, Ross, Dixon & Bell, LLP, Washington, DC, for Steadfast Ins. Co.

Daniel James Standish, Wiley, Rein & Fielding, LLP, Washington, DC, for Reliance Ins. Co. of Illinois.

*MEMORANDUM OPINION*

ALEXANDER HARVEY, II, Senior District Judge.

EquiMed, Inc. ("EquiMed") is the debtor in a Chapter 7 bankruptcy case pending in the United States Bankruptcy Court for the District of Maryland ("the Bankruptcy Court"). *In re EquiMed, Inc.,* Bankruptcy No. 00–1–1147–PM. Pending before this Court is an appeal from an Order entered by Bankruptcy Judge Paul Mannes in the *EquiMed* case. Appellants Douglas R. Colkitt ("Colkitt"), Joanne Russell ("Russell") and Jerome Derdel ("Derdel"), former officers and directors of EquiMed, have here challenged the Bankruptcy Court's Order of May 3, 2002 granting the motion of appellee Reliance Insurance Company ("Reliance") to compel the transfer to its Liquidator of certain escrow funds held in an escrow account.

Briefs have been filed by the parties, and the record on appeal has been reviewed by the Court. In view of the parties' briefing and the extensive record before it, this Court concludes that oral argument is not needed. *See* Bankruptcy Rule 8012. For the reasons stated herein, the Bankruptcy Court's Order of May 3, 2002 will be affirmed in part and reversed in part.

I

*Background Facts*

The background of this appeal is long and tortuous. It includes proceedings in

this Court, in the Bankruptcy Court, in state and federal courts in Pennsylvania and in a state court in Georgia. In its Memorandum Opinion of November 1, 2001, this Court granted the motion of EquiMed's Trustee for approval of the settlement of an adversary proceeding in the Bankruptcy Court (the "Global Settlement"), denied the Trustee's motion for approval of the settlement with respect to certain insurance coverage litigation (the "Insurance Settlement"), and ruled on numerous other matters which had arisen in the *EquiMed* bankruptcy case. *United States ex rel. Rahman v. Oncology Associates, P.C.,* 269 B.R. 139 (D.Md.2001). The convoluted facts which formed the background for the Court's ruling in that case were set forth in some detail in that Opinion and will be repeated here only insofar as they relate to the pending appeal.

At the time of this Court's ruling in the *Rahman* case, there was pending in the *EquiMed* bankruptcy case an adversary proceeding brought by EquiMed and the appellants against Steadfast Insurance Company ("Steadfast") and Reliance (hereinafter the "Coverage Action"). That action had originally been instituted in the Court of Common Pleas of Centre County, Pennsylvania on May 6, 1999 by EquiMed, its subsidiary and appellants Colkitt, Russell and Derdel. *EquiMed, Inc., et al. v. Steadfast Insurance Co.,* Civil Action No. 99–585 (Court of Common Pleas of Centre County). The original action was brought against Steadfast, and Reliance was later added as a defendant. The officers and directors of EquiMed had been insured against claims made against them under a director and officer ("D & O") liability policy issued by Steadfast. The three appellants were also insured against claims against them in excess of the Steadfast policy under a separate D & O policy issued by Reliance. Claims for breach of contract and bad faith were asserted in the

Coverage Action by the individual plaintiffs who sought to compel the insurance companies to pay defense costs arising in various civil actions brought against them, including the False Claims Act suit brought by the government in this Court and docketed as *United States ex rel. Rahman v. Oncology Associates, P.C., et al.,* Civil No. H–95–2241, 2000 WL 1074304.

Shortly after the Coverage Action was instituted in the Pennsylvania state court, Reliance filed a separate action in the Superior Court of Fulton County, Georgia against EquiMed, Colkitt and others seeking declaratory relief and rescission of its D & O policy on the ground that it had been issued as a result of materially false information provided by Colkitt in the application for the policy. *Reliance Insurance Company of Illinois v. EquiMed, Inc., et al.,* Case No.1999 CV–11588 (Superior Court of Fulton County, Georgia). EquiMed filed a motion to stay those proceedings on the ground that the issues in the Pennsylvania state court and in the Georgia state court were similar and that there would be duplicative litigation if both cases proceeded at the same time. Following a hearing, the Georgia court entered an Order on November 22, 1999 staying that action pending the issuance of a final judgment by the Pennsylvania state court or until further order of the Georgia court.

Soon after the involuntary *EquiMed* bankruptcy proceedings had been commenced in the Maryland Bankruptcy Court, EquiMed itself filed a voluntary petition for relief under Chapter 11 in the United States Bankruptcy Court for the Middle District of Pennsylvania. Reliance then removed the state Coverage Action to the United States District Court for the Middle District of Pennsylvania and moved to transfer the case to this Court. That motion to transfer was granted, and the

Coverage Action was subsequently transferred to the United States Bankruptcy Court for the District of Maryland where it was docketed in the *EquiMed* bankruptcy case as Adversary No. 00–1430–PM.

In the Fulton County suit, Reliance had tendered the sum of $363,535.75 (the "Escrow Funds") to EquiMed representing the amount of the premium which had been paid to Reliance plus interest and which Reliance sought to refund in order to effectuate the rescission of the policy. EquiMed refused to accept that payment, and on October 4, 1999, the Fulton County Court entered a Consent Order providing for the deposit of those funds in the registry of that Court pending disposition of the action or until further order of the Court.

On September 13, 2000, Russell filed a motion to withdraw the reference of the Coverage Action and after such withdrawal to remand it to the Court of Common Pleas of Centre County or to abstain. That matter was docketed in this Court as Civil No. H–00–2728. Following briefing by the parties, this Court denied Russell's motion in its Opinion of October 20, 2000. *In re EquiMed, Inc.*, 254 B.R. 347 (D.Md. 2000). Pending before the Bankruptcy Court at that time was a motion filed by Russell and the other plaintiffs in the Coverage Action seeking to remand that litigation to the state court or to abstain. In denying Russell's motion, this Court concluded that it was· the Maryland Bankruptcy Court and not this Court which should consider and apply the factors necessary for determining whether or not the Coverage Action should be remanded to the Pennsylvania state court. *Id.* at 351.

Subsequently, the Trustee agreed to the terms of the Insurance Settlement which effected a settlement of the adversary proceeding pending in the *EquiMed* bankruptcy case against Steadfast and Reliance. A formal Settlement Agreement and Mutual Release (the "Settlement Agreement") was executed by the parties. The Trustee then filed a motion in the Bankruptcy Court for approval of the Insurance Settlement which had been reached by him with Steadfast and Reliance. Reference of that motion was withdrawn by this Court and docketed as Civil No. H–01–3014.

Provisions of the Global Settlement Agreement were clearly inconsistent with provisions of the Insurance Settlement. In its Memorandum Opinion of November 1, 2001, this Court approved the Global Settlement. *Rahman,* 269 B.R. at 152. However, the Court denied the Trustee's motion for approval of the Insurance Settlement, concluding that the officers and directors of EquiMed should be entitled to litigate the question whether they are protected by the D & O liability policies at issue and whether they are entitled to the policies' benefits. *Id.* at 160. Pursuant to the Global Settlement, as approved, any interest which the debtor EquiMed might have in the Coverage Action was assigned to Colkitt and the other officers and directors.

Under the Settlement Agreement reached as to the Coverage Action, the parties agreed that the $363,535.75 which had been held in the registry of the Fulton County Court should be transferred to an interest-bearing escrow account (the "Reliance Escrow Account") with the law firm of Wiley, Rein and Fielding acting as the escrow agent. A Consent Order was entered by the Fulton County Court on March 15, 2001 directing the Clerk of that Court to pay the sum of $363,535.75 to the Reliance Escrow Account where it has since been held. As a further part of the Insurance Settlement, Reliance deposited an additional sum of $100,000 into this Account. When this Court declined to approve the settlement of the Coverage Ac-

tion, both this $100,000 and the $363,537.75 transferred from the registry of the Fulton County court remained in the Reliance Escrow Account.

After this Court declined to approve the Insurance Settlement in its *Rahman* decision, the Coverage Action remained pending in the *EquiMed* case as Adversary No. 00–1430–PM. On December 12, 2001, Bankruptcy Judge Mannes held a hearing on the motion of Colkitt, Russell and Derdel to sever their claims against the insurers in the Coverage Action and to remand the same to state court, or in the alternative to abstain from exercising jurisdiction and remand the case to the state court. In his 10 page Memorandum Decision of February 5, 2002, Judge Mannes abstained from the exercise of jurisdiction over the Coverage Action and remanded that litigation to the Court of Common Pleas of Centre County. Judge Mannes determined that the Coverage Action could be tried expeditiously in the Centre County court.

Matters here have been further complicated by the insolvency of Reliance. In an Order of Liquidation entered in the Commonwealth Court of Pennsylvania on October 3, 2001, Reliance was declared to be insolvent and placed into liquidation, and a Liquidator was appointed to take possession of Reliance's property, business and affairs. *Koken v. Reliance Insurance Co.,* A.2d 209 (Pa.Cmwlth.2001). The Liquidator has taken the position that the funds held in the Reliance Escrow Account are assets of Reliance which should now be returned to the Liquidator for disposition as a part of the insolvent's property in liquidation proceedings pending in the Commonwealth Court of Pennsylvania. Since the Trustee had as a part of the Global Settlement previously assigned to Colkitt all of EquiMed's rights with respect to the Reliance insurance policy, the

Trustee had no objection to such a transfer. However, the appellants objected, claiming that funds in the Reliance Escrow Account do not belong to Reliance at this time.

Shortly after Judge Mannes had entered his Order of February 5, 2002 remanding the Coverage Action to the Centre County court, Reliance and its Liquidator filed a motion to compel the immediate transfer of funds remaining in the Reliance Escrow Account to the Liquidator. The movants asked the Bankruptcy Court to compel the Trustee and Colkitt to authorize the transfer to Reliance's Liquidator of the funds which had been placed in this Escrow Account pursuant to the terms of the Settlement Agreement. Judge Mannes held a hearing on that motion on May 1, 2002.

In his Memorandum Decision of May 3, 2002, Judge Mannes granted Reliance's motion, both as to the $100,000 and the $363,535.75. His Order of May 3, 2002 directed the Trustee and Colkitt to provide counsel for Reliance and its Liquidator with written authorization to transfer the funds held in the Reliance Escrow Account to the Liquidator. In this appeal, appellants Colkitt, Russell and Derdel challenge that Order of Judge Mannes.

II

*Discussion*

Two arguments are advanced by appellants in this appeal. They first contend that since the Coverage Action has now been remanded to the Court of Common Pleas of Centre County, Pennsylvania, the Bankruptcy Court lacked jurisdiction to enter its Order of May 3, 2002. Secondly, they contend that the escrow funds received from the registry of the Fulton County court did not belong to Reliance, but in fact should have been returned to an appropriate court registry or escrow ac-

count pending a final decision in the Coverage Action.

The parties here do not dispute the return of the $100,000 to the Liquidator. These funds are assets of Reliance and were placed in the Reliance Escrow Account pursuant to the settlement of the Coverage Action which was not approved by the Court. The Settlement Agreement clearly provides that if the proposed settlement was not approved by the Court, the Trustee and Reliance should promptly take steps to return the $100,000 to Reliance. Accordingly, the Order of Judge Mannes will be affirmed insofar as the requested transfer to Reliance's Liquidator of $100,000 in the Reliance Escrow Account is concerned.

■ There is no merit to appellants' argument that the Bankruptcy Court no longer had jurisdiction to enter the Order of May 3, 2002 after the Coverage Action had been remanded to the Pennsylvania state court. Paragraph 17 of the Escrow Agreement of December 22, 2000 entered into by the Trustee, Reliance and the Escrow Agent provides as follows:

17. The Escrow Agent is subject to the orders of the United States Bankruptcy Court for the District of Maryland— Greenbelt Division. The Escrow Agent's administration of the Escrow Account shall constitute a submission by the Escrow Agent to the jurisdiction of the United States Bankruptcy Court for the District of Maryland—Greenbelt Division for the purpose of implementing, interpreting and enforcing this Agreement.

■ Clearly, the parties to the Escrow Agreement agreed that the Bankruptcy Court should at all times have jurisdiction to determine the disposition of the funds in the escrow account. The fact that the Coverage Action has been remanded to the Pennsylvania state court did not nullify the provisions of the Escrow Agreement governing the ultimate disposition of the escrow funds. This Court concludes that the Bankruptcy Court was not, as a result of Judge Mannes' Order of February 5, 2002, deprived of jurisdiction to rule on Reliance's motion to compel the transfer of the escrow funds. It is well established that a federal court may consider collateral issues after an action is no longer pending. *Watson v. Charleston Housing Auth.,* 83 F.Supp.2d 709, 711 (S.D.W.Va.2000). Questions relating to the disposition of the escrow funds after this Court's disapproval of the Insurance Settlement raised collateral issues which necessarily had to be decided by the Bankruptcy Court even though the Coverage Action was no longer pending before it.

■ Whether or not the $363,535.75 belongs to Reliance and should be returned to its Liquidator presents quite a different question. Paragraph 4 of the Insurance Settlement Agreement is quite explicit with reference to the disposition of the escrow funds in the event that the Court disapproves settlement of the Coverage Action. That Paragraph provides as follows:

4. If for any reason the Court enters a Final Order that does not approve the proposed settlement by entry of an order substantially in the form of Exhibit A, or such other form as is acceptable to Steadfast, Reliance and the Trustee, then this Agreement shall become null and void and *the parties hereto shall be restored to the status quo ante* existing prior to the execution of the Agreement. In such event, the Trustee and Reliance promptly shall take steps to return $100,000 of the funds contained in the Reliance Escrow Account plus interest accrued on such amount to Reliance, and the Trustee and Reliance promptly *shall*

*take steps to transfer $363,535.75 of the funds contained in the Reliance Escrow Account plus interest on such amount to an appropriate court registry or escrow account* pending the final resolution of the issue whether the Reliance Policy is void *ab initio.* The Trustee and Reliance will take all steps necessary under the governing Escrow Agreement to accomplish the return and transfer of such funds within ten (10) days of the termination of this Agreement. (Emphasis added).

It is significant that this Paragraph 4 of the Settlement Agreement contains quite different provisions with reference to the $100,000 from those applicable to the $363,535.75. If the settlement of the Coverage Action is not approved by the Court, it is provided that the $100,000 should be returned "to Reliance." However, in the event of such non-approval, the $363,535.75 is to be transferred "to an appropriate court registry or escrow account pending the final resolution of the issue whether the Reliance Policy is void *ab initio.*" In the first sentence of Paragraph 4, the intention of the parties is clear that if the Settlement Agreement is not approved, the parties "shall be restored to the status quo ante existing prior to the execution of the Agreement."

It is not here disputed that as provided in Paragraph 4 of the Settlement Agreement, the $100,000 should be returned to Reliance. However, appellee Reliance has here argued that the $363,535.75 should now be returned to it in spite of the express language of Paragraph 4. This Court must disagree. Reliance specifically agreed that if the Insurance Settlement was not approved, the $363,535.75 held in the Reliance Escrow Account should be transferred to an appropriate court registry or escrow account. Those funds are not assets of Reliance or its Liquidator at

this time. The interest of Reliance in these funds is a contingent one and depends on the ultimate outcome of the Coverage Action. If the ruling of a Pennsylvania state court is that Reliance's D & O policy should be rescinded, then the money in question will be returned to the appellants. If on the other hand, Reliance does not ultimately prevail in the Coverage Action, then the money will be returned to the Liquidator as the premium which was paid to Reliance for the D & O policy issued.

Return of this sum to the Liquidator at this time would result in a substantial loss to the appellants if Reliance ultimately prevails and the policy is rescinded. Although Colkitt and the other appellants would then have a claim for the return of the premium which was paid, they would be merely creditors in the Reliance insolvency proceedings. Depending upon the outcome of that litigation, the amount received by them would undoubtedly be considerably less than $363,535.75.

In its brief, appellee Reliance does not deny that it previously agreed that, if the Insurance Settlement was not approved by the Court, the $363,535.75 in the Reliance Escrow Account should be transferred to an appropriate court registry or escrow account pending final resolution of the issue whether its D & O policy was void *ab initio.* Appellee rather argues that the escrow funds at issue should not be transferred back to the Fulton County Court. This Could would agree. The registry of the Georgia Court is not at this late date the one to which the funds at issue should be transferred. But such a determination is not a ground for the return of the funds to the Liquidator to be included as an asset of the insolvent estate of Reliance.

Appellee argues that Judge Mannes erred in remanding the Coverage Action to the Court of Common Pleas of Centre

County Pennsylvania by way of his Order of February 5, 2002. According to Reliance, the case should have been transferred to the United States District Court for the Middle District of Pennsylvania where the Centre County Court is located in order that the remand could be effectuated by that federal court. But Reliance did not appeal Judge Mannes' Order of February 5, 2002 remanding the Coverage Action to the Court of Common Pleas of Centre County.

Courts have reached different conclusions in deciding whether or not a federal court in one state is authorized to remand a case to a state court in another state. *Compare Breed Technologies, Inc. v. Allied Signal, Inc.*, 128 F.Supp.2d 743, 746 (D.Del.2001) with *Abels v. State Farm and Casualty Co.*, 770 F.2d 26, 29 (3d Cir. 1985). Recently, Judge Grine of the Court of Common Pleas of Centre County entered on June 28, 2002 a "Rule to Show Cause" directing plaintiffs to show cause why Civil No. 99–585 (the Coverage Action) should not be stricken from the Court's trial list. A hearing on the matter has been scheduled for August 9, 2002.

Other than its determination that the Fulton County Court is *not* the appropriate court to which the funds at issue should be transferred, this Court will not in this appeal decide what particular court should be the appropriate one to hold in its registry the $363,537.75 at issue. No appeal was taken by Reliance from Judge Mannes' Order of February 5, 2002. The Court of Common Pleas of Centre County now has before it the question whether the Coverage Action should be stricken from its trial list. Counsel for appellants agree that their claim against Reliance asserted in the Coverage Action must be stayed as a result of Reliance's insolvency proceedings. They have, however, asked Judge Grine of the Centre County Court to have their claims against Steadfast returned to the trial list at an early opportunity.

On the record here, this Court concludes that the funds at issue should be retained in the Reliance Escrow Account until a court of competent jurisdiction in Pennsylvania decides what court in that state should hear and decide the issues presented in the Coverage Action relating to appellants' claims against Reliance. Presumably, the Court called upon to decide those issues will be either the Commonwealth Court of Pennsylvania or the Court of Common Pleas of Centre County. When a decision has been made as to the proper court to hear those issues, the $363,535.75 in the Reliance Escrow Account should be transferred to the registry of that court to be retained pending final determination of the question whether or not Reliance's D & O policy was void *ab initio*.

For all these reasons, the Order of the Bankruptcy Court of May 3, 2002 will be affirmed in part and reversed in part. The Bankruptcy Court's Order will be affirmed insofar as it ordered the Trustee and Colkitt to arrange for the transfer of the $100,000 in the Reliance Escrow Account to the Liquidator of Reliance. The Order will be reversed insofar as it ordered the Trustee and Colkitt to arrange for the transfer of the $363,535.75 in the Reliance Escrow Account to Reliance's Liquidator. That sum should be held in the Reliance Escrow Account and transferred to the registry of an appropriate Court when a Pennsylvania state court has determined the appropriate court to hear and decide appellants' claims against Reliance. An appropriate Order will be entered by the Court.